### JOSEPH R. DAVIS *vs.* LEONARD SHERMAN.

Upon the question whether a certain piece of land is included by the description in a deed, evidence of the value of the land to the grantor, as a part of his own adjoining farm, is inadmissible.

One boundary in a deed of land was described as running from a monument, " thence in said wall as it now stands," to another monument. In fact, the wall extended from each monument straight towards the other, but with an interval of several rods in the middle. *Held,* that, for the purpose of showing that a wooden fence, built circuitously across the interval so as to include less land than a straight continuation of the wall would have included, was the true boundary, declarations as to the fence, made by the grantee upon the land soon after the delivery of the deed, and even nine years after, were admissible.

Where the place of a wall, by which land is described in a deed as bounded, is ambiguous, the refusal of the presiding judge to instruct the jury that it would be their duty, if they rejected a direct line, to take as the boundary any other continuous line of wall, if such could be found by the evidence, which would come nearest to giving the grantee the number of acres mentioned in his deed as the amount, "more or less," of land granted, is no ground of exception.

ACTION OF TORT for entering upon the plaintiff's land in Fairhaven, and removing a fence.

At the trial in the court of common pleas, before *Morris, J.,* the plaintiff claimed title, through his father, Walter Davis, by descent from Nathan Davis. The defendant claimed title under a deed to Wing Howland from Nathan Davis, dated February 1st 1827, (and expressed to be in consideration of $200,) of part of his farm, described as " containing ten acres, be the same more or less," and by metes and bounds, which, after running to a certain wall, ran " thence northerly on said wall, as it now stands, to said Wing Howland's land."

The question in dispute was, whether a piece of land, called at the trial " the jog," which contained about five or six rods, and included a spring and well of water, passed by this deed. It appeared that at the date of this deed a stone wall extended in a direct line from each end of the boundary towards the other end, but with an interval of several rods; and that a continuation of the boundary line straight across this gap would give the land in controversy to the defendant. But the plaintiff contended that the true boundary across this interval was in the line of a wooden fence, which, at the date of the deed, passed circuitously

around said land, and which would leave it part of the farm of Nathan Davis.

The court ruled and instructed the jury " that, in the absence of all controlling evidence, the true boundary would be a direct line from the end of one wall to the opposite wall; but that if the jury should be satisfied that, at the date of the deed, there was in fact a fence passing from wall to wall around the 'jog,' and should be also satisfied, from the acts of the parties to the deed, at the time of its execution and afterwards, that they understood and intended said fence as the true boundary between their lands, then the 'jog' would not pass by the deed."

The court permitted the plaintiff, against the objection of the defendant, to introduce the testimony of Walter Davis, son of Nathan, and father of the plaintiff; also that of Walter A. Davis, a brother of the plaintiff. Walter Davis testified that, " soon after the making of the deed, Wing Howland and himself went upon this line, and Howland then said he wanted a wall made around the watering place, where the fence was, and brought a stake to be put where the wall should be, and the stake was then put there." Walter A. Davis testified that in 1836, while Wing Howland owned the farm conveyed by the deed, and Walter Davis owned that now owned by the plaintiff, Howland told him " he wanted to take down a few lengths of the fence, so that his cows could go across, and not be obliged to go around, and, when we wanted the water, he would put it back again ; " and that this was said near the spring.

To show the situation and circumstances of this " jog " of land, in its relations to the plaintiff's farm, the plaintiff offered to prove by Nathaniel S. Spooner its value as a watering place to the plaintiff's farm. This evidence was objected to by the defendant, but admitted by the court; and Spooner testified that he was acquainted with the Nathan Davis farm, and there was no other permanent water on the farm, except this spring; that the " jog." itself, independently of the spring, was not worth more than ten dollars an acre; but if he owned the farm, he would not part with the spring for $1000, and that the fair value of it would be from $250 to $500.

It appeared in evidence that, assuming the direct line to be the true boundary, there would be in the farm conveyed an area of only eight acres and fifty eight rods. The defendant requested the court to instruct the jury "that if in ascertaining the true boundary they rejected the direct line, it would be their duty to take as the boundary on that side of the farm any other continuous line of wall, if such could be found from the evidence, which would come nearest to giving to the grantee's farm an area of ten acres, as mentioned in his deed." But the court declined to give this instruction.

The jury found a verdict for the plaintiff, and the defendant alleged exceptions.

*T. D. Robinson*, for the defendant.

*T. M. Stetson*, for the plaintiff.

Metcalf, J. The court are all of opinion that the testimony of the witness Spooner was inadmissible, and that, for this reason, a new trial must be ordered. The question on trial was, whether Nathan Davis's deed to Wing Howland conveyed the land in controversy. The consideration mentioned in that deed was two hundred dollars. And the testimony of the witness was admitted, we suppose, for the purpose of showing, either from the smallness of the alleged consideration, or from the great value, to the grantor, of the land in question, and its importance to the enjoyment of his other land, or from both these circumstances, that he could not have intended to convey it, and therefore that the deed did not cover it. The construction of a deed cannot be affected by such testimony.

A majority of the court are of opinion that the extrinsic evidence showed a latent ambiguity in the description of the boundary line given in the deed; that the evidence as to the acts of the parties to the deed, at the time of its execution and afterwards, was rightly admitted; and that the instruction given to the jury on that point was correct.

The court are all of opinion that the judge rightly declined to give the last instruction asked for by the defendant.

*New trial in the court of common pleas.*